# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Wigman*, 2012 IL App (2d) 100736

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES J. WIGMAN, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-10-0736 |
| Filed | November 8, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for DUI and improper lane usage were affirmed in his appeal alleging that he was denied his right to a speedy trial, since defendant admitted that he failed to preserve the issue of a speedy-trial violation, and his claim that his counsel's failure to move for a discharge based on a speedy-trial violation amounted to a denial of effective assistance that constituted an error reviewable under the plain-error doctrine was negated by the fact that defendant never made an effective demand for a speedy trial. |
| Decision Under Review | Appeal from the Circuit Court of Kendall County, Nos. 07-DT-308, 07-TR-15690; the Hon. Ronald G. Matekaitis, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on          Thomas A. Lilien and Paul Alexander Rogers, both of State Appellate
Appeal              Defender's Office, of Elgin, for appellant.

                    Eric C. Weis, State's Attorney, of Yorkville (Lawrence M. Bauer and
                    Kristin M. Schwind, both of State's Attorneys Appellate Prosecutor's
                    Office, of counsel), for the People.


Panel               JUSTICE BIRKETT delivered the judgment of the court, with opinion.
                    Justice Hudson concurred in the judgment and opinion.
                    Justice Hutchinson dissented, with opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, James J. Wigman, was convicted of driving under the influence of alcohol (DUI) and improper lane usage. 625 ILCS 5/11-501(a)(2), 11-709(a) (West 2006). Defendant appeals, alleging that his statutory right to a speedy trial was violated. Defendant acknowledges that he failed to preserve the issue but asks us to consider the issue under the plain-error doctrine or, alternatively, to find that trial counsel provided ineffective assistance of counsel by failing to move for discharge. We find that there was no error, because there was no lawful basis for raising a speedy-trial objection.


¶ 2                                  I. BACKGROUND

¶ 3    The proceedings in this case were not transcribed. The record on appeal consists of an agreed statement of facts, the common-law record, and a DVD of defendant's arrest.[1]

¶ 4    On the afternoon of October 12, 2007, Yorkville police officer Sarah Cernekee received a dispatch that a hit-and-run accident had occurred involving a black Kia that was traveling south on Route 47. Further dispatches described the same vehicle as driving all over the roadway. The officer saw the Kia driving completely on the shoulder of Route 47, and she stopped the vehicle. Defendant was the driver and sole occupant of the vehicle. The officer described him as being highly intoxicated, and her description was confirmed by the in-squad video. Defendant was incapable of distinguishing his driver's license from a credit card, and, when he was asked to step out of his vehicle, he fell to the roadway and was unable to stand without assistance. Defendant was arrested for DUI. He refused to submit to a breath test to

---

[1]During the pendency of this appeal, the State filed two motions that remain open: (1) a motion to cite additional authority, *People v. Minor*, 2011 IL App (1st) 101097; and (2) a motion to clarify a point raised at oral argument. We take these motions with the case and hereby grant both motions.

determine whether he was under the influence of alcohol. Defendant was charged with DUI and improper lane usage. 625 ILCS 5/11-501(a)(2), 11-709(a) (West 2006).

¶ 5 Defendant's bail was set at $3,000, which he posted on October 15, 2007. On November 1, 2007, the case was continued to December 14, 2007. On December 14, 2007, the State furnished discovery material. The case was then continued to January 17, 2008, and the record indicates that on that date defendant sought a continuance to March 6, 2008, to retain a private attorney. On March 6, 2008, defendant failed to appear in court and the court issued an arrest warrant and set bail at $6,000, with 10% to apply. On May 1, 2008, because defendant was in custody in Will County, the deputy public defender appointed to represent defendant applied for a writ of *habeas corpus ad prosequendum* to have the Will County sheriff produce defendant in Kendall County for a court appearance in this case on May 22, 2008. The court issued the writ, but Will County failed to produce defendant. On May 22, 2008, the court entered an order that directed the "State to writ" defendant from Will County to Kendall County for a court appearance on June 5, 2008. On June 5, 2008, the court issued an order reflecting that the warrant remained outstanding. On September 16, 2008, defendant's attorney obtained another order for a writ of *habeas corpus* to have defendant brought from the Will County jail to Kendall County for a September 24, 2008, appearance. Defendant was not produced on September 24, 2008. On October 3, 2008, another order was issued to have Will County produce defendant on October 24, 2008. Again, Will County failed to produce defendant, and the court, on application of the State, issued an order directing the Will County sheriff to produce defendant in Kendall County for a court appearance on November 21, 2008.

¶ 6 On November 21, 2008, defendant was produced pursuant to the order. Defendant's oral *pro se* motion to dismiss on speedy-trial grounds was denied. On that same date, defendant filed a typed document entitled, "Speedy Trial Demand." The document contains the case numbers in this case as well as case numbers for six charges, four misdemeanors and two felonies, for which he was being held in custody in Will County. The document goes on to explain:

> "and I am starting my trial for 08 CF 319 on 10/2/2008. My current combined bond is $7,800. The best offer I have received from the state is 2½ years in the Department of Correction.
>
> I missed my first court appearance due to being in custody of Will County. I have sent a letter myself in March trying to writ myself to Kendall County which failed and I have since then had a family member try to get me brought to Kendall County on three other separate occasions. I don't understand what is going wrong with the procedure but Will County has failed to bring me to these appearances even when ordered by the judge. I am trying to get my legal issue taken care of so I can go on with my life and properly take care of my wife and two children.
>
> I am asking that my case be dismissed for failing to give me a speedy trial."

Defendant's signature on the document is in pencil and it is dated September 28, 2008.

¶ 7 Defendant's attorney was granted leave to file a motion to reconsider the denial of defendant's *pro se* motion to dismiss, and the matter was continued to December 23, 2008.

¶ 8        On December 5, 2008, defendant's attorney filed a "Motion to Reconsider Ruling on Defendant's Motion to Dismiss." The motion states that defendant's oral motion was "based on violation of the Speedy Trial statute" (725 ILCS 5/103-5 (West 2006)). The motion states in paragraph three:

> "3. The Defendant believes the holdings in *People v. Schmidt*, 233 Ill. App. 3d 512, *People v. Parsons*, 48 Ill. App. 3d [618], *People v. Exson*, 384 Ill. App. 3d 794, and *People v. Sandoval*, 381 Ill. App. 3d 142 warrant the court's decision to be re-evaluated."

¶ 9        On December 23, 2008, the trial court entered an order reflecting that defendant was present in open court "in custody," and the case was continued to January 8, 2009, for ruling on defendant's motion to reconsider the motion to dismiss. The court also "quashed and recalled" the failure-to-appear warrant that was issued on March 6, 2008. On January 8, 2009, defendant appeared in court, still in "Will County custody." The court entered an order stating that "defendant's motion to reconsider is hereby denied based on case *People v. Wiseman*." On defendant's motion the "writ" was continued to February 2, 2009. On January 15, 2009, defendant filed a *pro se* notice of appeal, requesting review of the denial of the motion to dismiss. In the notice, defendant states:

> "The Honorable Judge refused to dismiss case citing *People v. Wiseman*, App. 5 Dist. 1990, 142 Ill. Dec. 696, 195 Ill. App. 3d 1062, 553 N.E.2d 46.
>
> Defendant believes his case should be dismissed citing *People v. Parsons*, App. 2 Dist. 1977, 6 Ill. Dec. 715, 48 Ill. App. 3d 618, 363 N.E.2d 396."

¶ 10       The appeal was docketed in this court as No. 2-09-0083. On February 2, 2009, defendant appeared in Kendall County but remained in Will County's custody. He filed a *pro se* "Motion For Case Dismissal For Violation of Due Process." The motion alleged that on March 6, 2007, a warrant was issued for defendant's arrest and that, on the dates of May 1, 2007, September 16, 2007, and October 3, 2007, the trial court "ordered a writ of habeas at the request of defendant which was not done by the State." Defendant further alleged, "[t]he State violated the Defendant's constitutional right to due process by not allowing the court's writ of *habeas corpus* and therefore also denied Defendant's right to a speedy trial." The court heard the motion and, finding no basis for it, denied it. The order entered by the court reflected that on February 5, 2009, defendant elected to proceed *pro se*. The public defender appointment was modified to the status of "standby counsel." The order also noted that "there may be an issue of jurisdiction." On defendant's motion, the court continued the case to April 9, 2009, to check on the status of the appeal. This court entered an order dismissing defendant's appeal on March 10, 2009, for failure to comply with a previous order of this court.

¶ 11       On April 9, 2009, defendant appeared in Kendall County while still in the custody of Will County. The case was continued to May 14, 2009, for "plea or setting." The court's order noted, "State to writ in defendant from IDOC." The order also reflected, "speedy trial tolled." On April 16, 2009, the court entered an order for a writ of *habeas corpus*, on application of the State, directing the sheriff of Will County to produce defendant for a May 14, 2009, court appearance in Kendall County. The court also issued an order directing the warden at Stateville Correctional Center to produce defendant on that date.

¶ 12 On May 14, 2009, defendant appeared in open court pursuant to the writ. The trial court's order reflected that defendant remained "in Will County custody" and that on defendant's motion the matter was continued to June 25, 2009. The court's order further reflected that there was to be a hearing on a motion to dismiss and that: (1) a bench trial date was set for July 20, 2009; (2) the State objected to a new trial date; (3) all warrants on this case were quashed[2]; (4) the speedy-trial period was tolled; (5) defendant had two weeks to file any motions; and (6) the State had two weeks to respond. The record contains a signed jury waiver taken in open court on May 14, 2009.

¶ 13 The record reflects that on June 25, 2009, defendant did not appear and no motions were filed. However, the court order from that day also indicates that, on defendant's motion, the case was continued to bench trial on July 20, 2009. On July 20, 2009, defendant again failed to appear. The court's order reflected that the case was again continued on defendant's motion to August 12, 2009, for bench trial. The court ordered the "State to writ defendant in from IDOC."

¶ 14 Pursuant to the court's order, the warden at the Shawnee Correctional Center produced defendant in open court for his August 12, 2009, Kendall County appearance. The case was continued by agreement to October 14, 2009, for bench trial. Defendant was not produced on October 14, 2009, and the court continued the case on its own motion to November 3, 2009, for bench trial. Pursuant to the court's order, the warden at Lawrence Correctional Center produced defendant in open court on November 3, 2009, for his Kendall County court appearance and bench trial. The court's order reflected that the case was continued again, over the State's objection and on defendant's motion, to January 5, 2010, for status. The court also continued the writ to January 5, 2010.

¶ 15 On January 5, 2010, defendant failed to appear in Kendall County. The court issued a warrant for defendant's arrest and set bail at $5,000, with 10% to apply. The order reflects that the warrant was issued "over PD objection."

¶ 16 On January 22, 2010, the circuit court clerk received correspondence from defendant. The envelope had a return address for defendant at the Will County Adult Detention Facility. The envelope contained two letters. The first letter requested that the Kendall County circuit court clerk correct its records. Defendant stated that he believed that his Kendall County DUI charge had mistakenly been listed on his record as a felony. The second letter was a request for a copy of the docket sheet for his "pending" DUI case (No. 07 DT 308). Neither of these letters made any reference to a speedy-trial demand.

¶ 17 On March 30, 2010, the circuit court clerk received more correspondence from defendant, again with a return address of the Will County Adult Detention Facility. The correspondence was a notice of filing and proof of service on the Kendall County State's Attorney of defendant's *pro se* "Motion to Quash Warrant." The motion stated, "[t]he defendant is currently in custody of the Will County Adult Detention Facility and has been in custody since December 30, 2009." The Illinois Department of Corrections inmate status

---

[2]The record does not reflect that there were any outstanding warrants on this case at that time.

website reflects that defendant was arrested on the Will County charges on December 30, 2009.

¶ 18    On March 31, 2010, on application of the State, the court entered an order directing the Will County sheriff to produce defendant in open court in Kendall County for a court appearance on April 29, 2010.

¶ 19    On April 7, 2010, the circuit court clerk received a letter from defendant dated April 2, 2010. In the letter defendant again asked the clerk to send him a copy of his "court docket sheet and a record of my Kendall County convictions at the Will County Adult Detention Facility." Again, no mention was made of a speedy-trial demand.

¶ 20    Defendant appeared in court on April 29, 2010, in the custody of the Will County sheriff's office. On the State's motion the case was continued to May 12, 2010, for jury trial. The order reflected that defendant's *pro se* motion to quash the warrant was heard and denied. The public defender was reappointed and the writ was continued.

¶ 21    On May 12, 2010, defendant appeared in court, still in the custody of Will County. Due to the absence of a material witness, the case was continued on the State's motion and over defendant's objection to June 15, 2010, for bench trial. The writ was continued.

¶ 22    On June 15, 2010, the matter proceeded to bench trial. The agreed statement of facts reflects that the State called the arresting officer and introduced the in-squad video, which was played in open court. Defendant rested without calling witnesses. Defendant was found guilty of both charges and sentenced to 364 days in the "Kendall County Jail with good time to apply and credit for 182 days already served." The sentencing order included the handwritten phrase, "released on this case only." On June 17, 2010, the trial court entered an order quashing and recalling the failure-to-appear arrest warrant that was issued on January 5, 2010.

¶ 23    No posttrial motion was filed. On July 15, 2010, defendant and appointed counsel filed timely notices of appeal and the State Appellate Defender was appointed to represent defendant. After the opening briefs were filed, we directed the parties to brief the issue of the trial court's award of 182 days of credit for actual days served toward defendant's sentence of 364 days in the Kendall County jail, as it relates to his claim that he was on bail during the entire pendency of this case except from the date of his arrest, October 12, 2007, until his release on bail, on October 15, 2007, which would have entitled him to four days' credit. In other words, we asked the parties to discuss how defendant could be entitled to credit pursuant to section 5-8-7(b) of the Unified Code of Corrections and yet be on bail for purposes of the speedy-trial statute as defendant argues in his brief. 730 ILCS 5/5-8-7(b) (West 2006); 725 ILCS 5/103-5(b) (West 2006).

¶ 24                                    II. ANALYSIS

¶ 25    Defendant acknowledges on appeal that he did not preserve the speedy-trial issue for review. Although defendant's *pro se* motion for dismissal was based on an alleged speedy-trial violation, defendant states that the trial court ruled correctly in denying that motion and the motion to reconsider that motion, because defendant had not made a demand prior to November 21, 2008. Defendant did not file a subsequent motion for dismissal or a posttrial

motion. Despite this procedural default, defendant urges us to review the issue under the plain-error doctrine or, in the alternative, for ineffective assistance of counsel.

¶ 26     Defendant argues that he was not brought to trial within 160 days of his speedy-trial demand filed on November 21, 2008. Defendant maintains that, because he had posted bond on the Kendall County DUI, he should be treated as having been "on bail" pursuant to section 103-5(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(b) (West 2006)) when he filed his demand, even though he was in the custody of Will County on unrelated charges at the time. Defendant argues that for him to prevail the crucial period is from January 22, 2010, to April 29, 2010. He argues that, even though he failed to appear on January 5, 2010, and did not appear again until April 29, 2010, in the custody of Will County, it would be unfair to attribute the entire delay to him. Defendant argues that as of January 22, 2010, the circuit court clerk was aware of his new address in the Will County Adult Detention Facility and that the State's Attorney had the obligation to keep itself informed of the status of the pending case. By defendant's calculations, excluding delays attributable to him, 164 days ran on the speedy-trial term before he was brought to trial, entitling him to have his convictions reversed. As to the award of credit for 182 days' served, defendant simply argues that the trial court was in error and that he was entitled to only 4 days' credit.

¶ 27     In response, the State argues that defendant has forfeited the speedy-trial claim on appeal. The State argues that, assuming we reach the issue, there can be no plain error because there was no error at all. The State agrees with defendant that he was not in custody when he filed his demand, so he was subject to section 103-5(b) of the Code (725 ILCS 5/103-5(b) (West 2006)). The State maintains, however, that defendant's failure to appear on January 5, 2010, resulted in a waiver of his demand. Alternatively, the State argues that, even if we do not consider it a waiver, the delay between January 5, 2010, and April 29, 2010, is attributable to defendant because his failure to appear caused or contributed to this delay. The State maintains that it is not required to conduct an investigation to locate a defendant who fails to appear.

¶ 28     As a preliminary matter, we address the State's argument that defendant has procedurally defaulted his speedy-trial claim by failing to raise it in the trial court. Defendant's claim is that his statutory right to speedy trial pursuant to section 103-5(b) of the Code was violated. 725 ILCS 5/103-5(b) (West 2006). To establish such a violation, a defendant need establish only that he was "not *** tried within the period set by statute and that defendant has not caused or contributed to the delays." *People v. Staten*, 159 Ill. 2d 419, 426 (1994) (citing *People v. Richards*, 81 Ill. 2d 454, 459 (1980)). The procedural vehicle for raising a claimed violation of the statutory right to a speedy trial is a pretrial motion to dismiss pursuant to section 114-1(a)(1) of the Code (725 ILCS 5/114-1(a)(1) (West 2006)). Section 114-1(b) of the Code provides that any motions for dismissal based upon a statutory speedy-trial violation, not made in writing prior to trial, "are waived." 725 ILCS 5/114-1(b) (West 2006); see *People v. Pearson*, 88 Ill. 2d 210, 218 (1981); *People v. Peco*, 345 Ill. App. 3d 724, 728 (2004). We find that defendant has waived this issue.

¶ 29     Defendant urges us to consider his claim for two reasons. He argues that trial counsel's failure to raise the alleged speedy-trial violation in the trial court is reviewable as plain error.

Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Alternatively, he asserts that counsel's failure to raise the issue resulted in ineffective assistance of counsel.

¶ 30   Under the plain-error doctrine, a reviewing court is permitted to consider unpreserved error under the following two scenarios:

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010).

¶ 31   The defendant bears the burden of persuasion under both prongs of the plain-error analysis. *People v. Lewis*, 234 Ill. 2d 32, 43 (2009). The first step in the plain-error analysis is to determine whether error occurred at all. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). The principles of waiver are construed liberally in favor of the defendant. *People v. Phipps*, 238 Ill. 2d 54, 62 (2010); *United States v. Jaimes-Jaimes*, 406 F.3d 845, 848 (7th Cir. 2005). A speedy trial claim can also be reviewed for ineffective assistance of counsel despite the defendant's waiver of the claim by failing to raise the issue in the trial court. *People v. Murray*, 379 Ill. App. 3d 153, 157 (2008). In order to establish a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient and that the deficient performance resulted in prejudice. The failure of counsel to move for discharge on the basis of a speedy trial violation will constitute ineffective assistance of counsel "when there is at least a reasonable probability that the client would have been discharged had a timely motion been filed and there was no justification for the attorney's decision not to file a motion." *Peco*, 345 Ill. App. 3d at 729 (citing *People v. Cooksey*, 309 Ill. App. 3d 839, 844 (1999)). "Counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if there is no lawful basis for raising a speedy-trial objection." *Phipps*, 238 Ill. 2d at 65. We must first determine whether defendant's statutory right to a speedy trial was violated before we can determine whether counsel was ineffective. See *People v. Cordell*, 223 Ill. 2d 380, 385 (2006).

¶ 32   When reviewing a speedy-trial claim, we examine "both the transcript of proceedings[3] and the common law record" in order to do justice to both the State and the defendant. *People v. Mayo*, 198 Ill. 2d 530, 536 (2002). Our analysis concerns the construction of section 103-5 of the Code and, as there are no specific facts in controversy, our review is *de novo*. *People v. Sandoval*, 236 Ill. 2d 57, 65 (2010). Although speedy-trial statutes " 'implement constitutional rights and are to be liberally construed,' " a threshold inquiry must be made to determine " 'whether a demand, or attempted demand, is sufficient to start the running' " of the time period set forth in the statute, here section 103-5(b) of the Code. *Id.* at 66 (quoting *Staten*, 159 Ill. 2d at 427) (both involving demands under section 3-8-10 invoking section 103-5(b)).

---

[3]The proceedings below were not transcribed. We examine the agreed statement of facts instead.

¶ 33    The clear and unambiguous holding of the Illinois Supreme Court in *People v. Wooddell*, 219 Ill. 2d 166, 177 (2006), states that "a defendant is subject to whatever speedy-trial statute applies at the time he or she makes a speedy trial demand." *Id.* A speedy-trial demand is not required to be in any particular form as long as it clearly conveys to the prosecution the defendant's "Speedy Trial Demand," as defendant's demand was titled, and it is not "calculated to camouflage the defendant's demand or otherwise hide it from the prosecutor's notice." *People v. Huff*, 195 Ill. 2d 87, 92-94 (2001).

¶ 34    Defendant's demand did not cite section 103-5(b); however, it did clearly convey defendant's demand to the prosecution and therefore would be effective if defendant were "on bail or recognizance" when he filed it. 725 ILCS 5/103-5(b) (West 2006). "Under the statutory scheme, a demand made by an accused in custody is premature, and we do not discern an intent by the legislature that such a demand should have any effect." *People v. Garrett*, 136 Ill. 2d 318, 329-30 (1990). As our supreme court has explained, the speedy-trial period for persons in custody begins to run automatically and no demand is needed to trigger the provisions of section 103-5(a) of the Code. *Id.* at 329; see 725 ILCS 5/103-5(a) (West 2006). We must determine whether defendant was in custody or on bail for the Kendall County DUI at the time he made his demand.

¶ 35    The dissent agrees with the position defendant has taken on appeal, that he was not in custody for the Kendall County DUI on November 21, 2008. There are several problems with this view, as we set out below. Defendant's demand did not specify which subsection of section 103-5 he was asserting when he filed his demand and his *pro se* oral motion to dismiss. However, the record clearly establishes that defendant and his attorney both took the position in the trial court that defendant was in custody on this case when he filed his demand. Defendant is estopped from arguing on appeal that he was on bail in Kendall County when he filed his demand. Defendant cannot try his case on one theory and then argue the opposite position on appeal. See *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). The trial court accepted defendant's premise, that he was in custody when he filed his demand, and denied defendant's motion to dismiss, based on *People v. Wiseman*, 195 Ill. App. 3d 1062, 1064 (1990) (a defendant in custody awaiting trial in one county with a charge pending against him in another county is not deemed in custody for the latter offense until the proceedings in the first county are terminated and he is then returned to or held in custody in the second county). To permit defendant to now argue that he was actually on bail when he filed his demand would offend all notions of fair play and encourage defendants to become duplicitous. *Harvey*, 211 Ill. 2d at 385.

¶ 36    At the time of his demand, defendant was in the physical custody of Will County and there was an outstanding warrant in this case with bail set at $6,000, which was issued by the trial court when defendant failed to appear on March 6, 2008. It is also clear from the record, as we explain below, that defendant, his trial attorney, and the trial court all viewed defendant as being in the simultaneous custody of both Will and Kendall counties at the time of his demand. Furthermore, when the court imposed sentence in this case, defendant was awarded credit for 182 *actual* days served. The sentencing order also contains the handwritten phrase, "released on this case only." At the time of sentencing, defendant was in Kendall County pursuant to a writ. He was in the custody of Will County on a new set of

charges. We asked the parties to file supplemental briefs on the issue of how the trial court's award of credit related to defendant's claim that he was on bail pending trial, except for four days. We asked whether it is possible to be entitled to credit pursuant to section 5-8-7(b) of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 2006)) and yet be on bail for purposes of the speedy-trial statute (735 ILCS 5/103-5(b) (West 2006)). Both defendant and the State maintain simply that the trial court erred in awarding 182 days of credit. Defendant argues that the sentencing issue is moot because, even without the 182 days of credit, defendant has completed his sentence, which by operation of law ran concurrently with sentences later imposed on his Will County convictions. This court cannot take cognizance of arguments in counsel's briefs, because they are not supported by the record. See *W.W. Mold & Tool v. DeRosa*, 251 Ill. App. 3d 433, 437 (1993).

¶ 37      Neither defendant nor the State discusses the effect of the outstanding arrest warrant on defendant's status when he made his demand. Defendant's demand stated "I am in custody of the Will County Adult Detention Facility" and "I missed my first court appearance due to being in custody of Will County." The document also stated "I am asking that my case be dismissed." In his brief, defendant acknowledges that this motion for dismissal was premature, because defendant had not previously filed a demand. This raises the question of why defendant, and then his attorney in a motion to reconsider, would move for discharge. A review of the common-law record makes clear that defendant was taking the position that he was in custody for the Kendall County DUI. In the motion to reconsider, defendant cited *People v. Schmidt*, 233 Ill. App. 3d 512 (1992) (involved an in-custody defendant, 120-day rule (Ill. Rev. Stat. 1991, ch. 38, ¶ 103-5(a))); *People v. Parsons*, 48 Ill. App. 3d 618 (1977) (in-custody defendant, 120-day rule (Ill. Rev. Stat. 1975, ch. 38, ¶ 103-5(a))); *People v. Exson*, 384 Ill. App. 3d 794 (2008) (in-custody defendant, extension of the 120-day rule for a witness); and *Sandoval*, 236 Ill. 2d 57 (intrastate-detainer statute demand made while defendant served a Department of Corrections (DOC) sentence (730 ILCS 5/3-8-10 (West 2004))). The trial court's order denying defendant's motion to reconsider stated that "defendant's motion to reconsider is hereby denied based on case *People v. Wiseman*." Defendant's notice of appeal from the denial of his *pro se* motion to dismiss states that the trial court also cited *Wiseman* when it denied defendant's motion. The trial court's reliance on *Wiseman* further confirms defendant's original claim, that he was in the simultaneous custody of Will and Kendall counties.

¶ 38      The appellate court in *Wiseman* held:

> "Section 103-5(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 103-5(a)), entitled 'Speedy Trial' (hereinafter Speedy Trial Act), provides that every person in custody in this State shall be tried within 120 days of the date he was taken into custody. Subsection (b) further provides that persons on bail or recognizance shall be tried within 160 days from the date they demand trial. (Ill. Rev. Stat. 1987, ch. 38, par. 103-5(b).) Failure to try an accused within this statutory time frame results in the discharge of the accused. (See, *e.g.*, *People v. Lykes* (1984), 124 Ill. App. 3d 604, 606, 464 N.E.2d 849, 851.) A defendant, however, who is in custody awaiting trial in one county with a charge pending against him in another county is not deemed in custody for the latter offense until such time as the proceedings against him in the first county are

terminated and he then is either returned to or held in custody for the second county. (*People v. Davis* (1983), 97 Ill. 2d 1, 13, 452 N.E.2d 525, 530; *People v. Clark* (1968), 104 Ill. App. 2d 12, 20, 244 N.E.2d 842, 846.) This is true even if the defendant already has appeared before the court in the second county but been returned to the first county. The second county does not have custody until the proceedings in the first county are concluded. (See *Davis*, 97 Ill. 2d at 13-14, 452 N.E.2d at 530-31; *People v. Wentlent* (1982), 109 Ill. App. 3d 291, 297, 440 N.E.2d 296, 300; *People v. Gardner* (1982), 105 Ill. App. 3d 103, 109-12, 433 N.E.2d 1318, 1322-24.)" *Wiseman*, 195 Ill. App. 3d at 1064-65.

¶ 39 Here, the trial court clearly held that defendant was in custody on the Kendall County DUI by virtue of the outstanding warrant but that he would not be deemed in-custody for speedy-trial purposes until the Will County proceedings were concluded.

¶ 40 We determine that the trial court correctly held that defendant was in simultaneous custody and that the holding in *Wiseman* applied. In other words, once Will County completed its prosecution, defendant would be returned to Kendall County and a new 120-day term would begin to run. Of course, that did not occur, because on December 23, 2008, on defendant's motion, the trial court quashed and recalled the March 6, 2008, failure-to-appear arrest warrant. While the speedy-trial term under section 103-5(a) of the Code had not begun to run on this case because defendant was in Will County's custody at the time of the demand, defendant was legally entitled to the credit for time served that the trial court awarded him.

¶ 41 Defendant maintains, without citation to authority, that he was on bail when he filed his demand. In his supplemental brief, defendant maintains that, because the failure-to-appear warrants were never executed, and in fact both warrants were quashed, they did not have any legal effect on defendant's status. Defendant's argument is unpersuasive. First, the trial court is presumed to know the law and apply it properly, absent an affirmative showing in the record to the contrary. *In re N.B.*, 191 Ill. 2d 338, 345 (2000). The record does not reflect any objection to the award of credit. We presume that the trial court conducted defendant's sentencing hearing pursuant to the provisions of the Unified Code of Corrections, carefully considering the arguments of counsel as to sentencing alternatives. See 730 ILCS 5/5-4-1(a)(5) (West 2006). The recommendation for credit for time served came from an attorney, most likely from the party who stood to benefit, defendant. Now, defendant stands to benefit by revising his position and arguing that in this case he was really in custody for only four days, and not while there were outstanding warrants for his arrest while he was in the Will County Adult Detention Facility awaiting trial (from March 6, 2008, to December 23, 2008, and from January 5, 2010, to June 17, 2010). If the arrest warrants had no legal effect on defendant's status, one must ask why he bothered asking that they be quashed. The answer is obvious: if he had been released on the Will County cases he would have been taken into custody on a Kendall County warrant.

¶ 42 The purpose of the statutory right to a speedy trial is to "guarantee a speedy trial and not 'to open a new procedural loophole which defense counsel could unconscionably use to obstruct the ends of justice.' " *People v. Gooden*, 189 Ill. 2d 209, 221 (2000) (quoting *People v. George*, 71 Ill. App. 3d 932, 934 (1979)).

¶ 43    The State cites to *People v. Miller*, 2011 IL App (5th) 090679, and *People v. Arnhold*, 115 Ill. 2d 379, 383 (1987), for the proposition that "a defendant who is out on bond on one charge, and who is subsequently rearrested and returned to custody on another charge, is not returned to custody on the first charge until his bond is withdrawn or revoked." *Arnhold*, 115 Ill. 2d at 383.

¶ 44    In *Miller*, the defendant was arrested and charged with burglary and theft. He posted bail. The next day he was arrested for attempted burglary, and he remained in jail on that charge. There were no new warrants issued for his arrest and the record did not indicate that he ever surrendered his bond on the burglary and theft case. He later pled guilty to theft under $300 (720 ILCS 5/16-1(a) (West 2004)) in exchange for a six-year sentence. The State dismissed all other charges. On appeal from the dismissal of his postconviction petition, the defendant maintained that his trial attorney was ineffective for failing to advise him to surrender his bond when he was arrested on a subsequent charge, which would have entitled him to additional credit for time served.

¶ 45    The appellate court in *Miller* did not address the sentencing-credit issue, because the issue was dependent on a finding of ineffective assistance of counsel, which the defendant raised for the first time on appeal and therefore forfeited.

¶ 46    In *Arnhold*, the defendant was arrested on June 3, 1980, for aggravated kidnapping and conspiracy to commit theft. He posted bond and was released on July 18, 1980. He was then arrested on unrelated charges on July 24, 1980, and he withdrew his bond for the kidnapping and conspiracy charges on August 21, 1980. The issue in the case had to do with the period from July 24, 1980, to August 21, 1980. Although the defendant was in custody on the subsequent charges, the bond on the initial charges remained in effect. Had he been able to post bond on the subsequent charges, he would have been released from custody. Therefore, for purposes of the speedy-trial statute, he was not in custody from July 24 to August 21, 1980. The Illinois Supreme Court stated that, "[w]hile we do not intend to defeat the purpose of the statute with a technical interpretation (see *People v. Wilson*[, 19 Ill. App. 3d 466, 468 (1974)]), we will not ignore the reality of the distinction between being in custody and being on bond." *Arnhold*, 115 Ill. 2d at 383. Likewise, we will not ignore reality in this case. On November 21, 2008, if defendant had been released on the Will County charges he would have remained in custody unless and until he posted bond on the failure-to-appear warrant in this case, which was double that of the original bond. The facts in *Miller* and *Arnhold* are inapposite to the facts in this case.

¶ 47    Our court recently addressed the effect of an outstanding arrest warrant for an offense in McHenry County on a defendant who was serving a sentence in the DOC as it related to credit for time served. *People v. Johnson*, 401 Ill. App. 3d 678 (2010); see 730 ILCS 5/5-8-7(b) (West 2006) ("[t]he offender shall be given credit *** for time spent in custody as a result of the offense for which the sentence was imposed").

¶ 48    In *Johnson*, we said that a defendant serving a sentence in the DOC when he was charged is entitled to credit for time served "from the date that he was charged instead of from the date the writ of *habeas corpus* was issued." *Johnson*, 401 Ill. App. 3d at 683. We relied upon the Illinois Supreme Court's analysis in *People v. Robinson*, 172 Ill. 2d 452 (1996), which

-12-

involved the interpretation of section 5-8-7(b) of the Unified Code of Corrections (730 ILCS 5/5-8-7(b) (West 1992)).

¶ 49   In *Robinson*, the defendant was arrested for murder and posted bond 37 days later. While out on bond, the defendant was arrested for an unrelated armed robbery. His bond on the murder was increased to $500,000, and he surrendered his previously posted bond. The defendant later pled guilty to the armed robbery and was sentenced to the DOC. Subsequent to his discharge from the DOC, the defendant was convicted of the murder and sentenced to 22 years. In holding that the defendant was entitled to credit on the murder for the time he served in the DOC on the armed robbery charge, the court stated, "[e]ven if defendant had not been incarcerated on the armed robbery charge, he would have remained in custody on the murder offense as a result of his failure to post bond." *Robinson*, 172 Ill. 2d at 459 (citing *People v. Higgerson*, 157 Ill. App. 3d 564, 566-67 (1987)).

¶ 50   In *Higgerson*, the defendant was convicted of driving while his license was revoked and DUI. At his first court appearance, the defendant's bond was set at $10,000, which he did not post. On that same day, the defendant was convicted of an unrelated driving-while-license-revoked charge and was sentenced to 364 days in jail. In holding that the defendant was entitled to credit for time served, the appellate court said, "[i]n the case at bar, bond was set at $10,000, which defendant failed to post. If he had not been incarcerated on the sentence imposed in case No. 84-TR-5795, he still would have been held in jail on the charge in the case at bar due to his failure to post bond." *Higgerson*, 157 Ill. App. 3d at 566-67.

¶ 51   The reasoning in *Robinson*, *Johnson*, and *Higgerson* supports the trial court's determination that defendant was entitled to credit for time served while there were arrest warrants outstanding in this case, even though he was in the custody of Will County. Assuming that defendant had posted bail in Will County, he would not have been released unless and until he posted the $6,000 bond necessary to secure his release in this case. Because he was in custody on this case on November 21, 2008, defendant's demand for a speedy trial was premature and had no legal effect.

¶ 52   Even if we were to find that defendant's demand was effective under section 103-5(b) of the Code, we would find that his statutory right to a speedy trial was not violated. Even if defendant may claim the benefit of the 160-day speedy-trial term under section 103-5(b), his failure to appear in Kendall County on January 5, 2010, resulted in a waiver of his demand.

¶ 53   The dissent's suggestion that the reasoning in *People v. Kohler*, 2012 IL App (2d) 100513, be extended to defendant's failure to appear on January 5, 2010, due to an arrest in another county is untenable. *Kohler* involved an excused absence where the defendant contacted his attorney before the scheduled court appearance and she explained that he was ill. The trial court, without objection from the prosecution, continued the case on the defendant's motion. On appeal, in holding that the defendant's excused absence due to illness did not amount to a waiver under section 103-5(b), this court specifically contrasted this type of excused absence to that of the defendant's earlier failure to appear, which resulted in a bond forfeiture and an arrest warrant. *Id.* ¶ 35. While an excused absence without objection from the State does not result in a waiver, an unexcused absence that

results in a bond forfeiture and a warrant clearly does.

¶ 54    Unlike in *Kohler*, there is nothing in the record to suggest that any explanation was offered for defendant's January 5, 2010, failure to appear. While the order entered that day reflected that the failure-to-appear arrest warrant was issued over the public defender's objection, that in no way alters the effect of defendant's failure to appear.[4] We agree with the dissent that the speedy-trial statute is to be liberally construed so as to give effect to the constitutional right to a speedy trial. *People v. Campa*, 217 Ill. 2d 243, 252 (2005). However, even the most liberal construction could not lead us to conclude that the legislature intended that the "failure to appear" waiver provision should not apply to a case such as this, where defendant's failure to appear was due to a new arrest in another county. With all due respect to our colleague, such a reading would " 'open a new procedural loophole which defense counsel could unconscionably use to obstruct the ends of justice.' " *Gooden*, 189 Ill. 2d at 221 (quoting *George*, 71 Ill. App. 3d at 934).

¶ 55    In *People v. Patterson*, 392 Ill. App. 3d 461 (2009), we interpreted the language in section 103-5(b), which provides that "[t]he defendant's failure to appear for any court date set by the court operates to waive the defendant's demand for trial made under this subsection." 725 ILCS 5/103-5(b) (West 2006). We determined that, when a defendant fails to appear after he has made a speedy-trial demand under section 103-5(b), he waives the demand. *Patterson*, 392 Ill. App. 3d at 467. The First District Appellate Court is in agreement with our interpretation. See *People v. Minor*, 2011 IL App (1st) 101097; *People v. Zakarauskas*, 398 Ill. App. 3d 451, 454 (2010). We are not persuaded by defendant's argument that defendant's failure to appear should not be treated as a waiver because he was in custody at that time and therefore his absence was "involuntary." We might be willing to accept defendant's argument if there were any evidence in the record to suggest that defendant made attempts to contact the court, his counsel, or the State's Attorney. The burden of presenting a sufficiently complete record rests with the appellant, and any doubts arising from an incomplete record will be resolved against the appellant. *People v. Ortiz*, 313 Ill. App. 3d 896, 900 (2000). The only evidence is that defendant wrote two letters to the circuit court clerk on January 22, 2010, neither of which made any mention of a demand for a speedy trial. He did not even attempt to notify the State's Attorney until March 30, 2010, when he filed his *pro se* motion to quash the arrest warrant.

¶ 56    Even if we were to find that defendant's failure to appear was not a waiver but that the speedy-trial term was simply tolled (725 ILCS 5/103-5(f) (West 2006)), we would rule against him. In *People v. Hatch*, 110 Ill. App. 3d 531 (1982), this court examined a fact pattern similar to the one presented here. In that case, the defendant was arrested for burglary in Du Page County and posted bond. After his release on bond, he filed a written speedy-trial demand on October 9, 1980. He failed to appear for arraignment and the court entered a bond forfeiture as well as a warrant for his arrest. The defendant was later arrested and charged with an unrelated felony in Kane County. He subsequently appeared in Du Page County, "presumably [on] a writ of *habeas corpus ad prosequendum*," while still in Kane County's

---

[4]We note that on January 5, 2010, defendant was still *pro se*.

custody. *Id.* at 532. The defendant's proceedings in Kane County ended on January 22, 1981, when he was convicted of theft and sentenced to 70 days already served. The defendant next appeared in Du Page County on January 23, 1981. His bond was revoked that day and he was turned over to the DOC, in whose custody he remained until February 27, 1981. The defendant filed motions for discharge based upon alleged violations of his right to a speedy trial. The trial court denied the motions, finding that the 120-day term (Ill. Rev. Stat. 1979, ch. 38, ¶ 103-5(a)) began to run on January 23, 1981, when Du Page County got custody. On appeal, the defendant argued that he was denied his right to a speedy trial, because he was not brought to trial either within 120 days of being taken into custody or within 160 days from the demand date. The defendant argued that, even though his case in Kane County had not ended, there was no obstacle to Du Page County's prosecution once he was brought there for arraignment. In rejecting the defendant's claims the court said:

> "However, we need not determine whether sections 103-5(a) and 103-5(b) are always exclusive of each other since it is readily apparent here that even if defendant may claim the benefit of the 160-day speedy-trial term of section 103-5(b), his failure to appear for arraignment on November 7, 1980, and his subsequent arrest and the trial proceedings in Kane County tolled the running of this statutory period until termination of the Kane County proceedings on January 22, 1981." *Hatch*, 110 Ill. App. 3d at 537.

¶ 57    As this court discussed in *Hatch*, any other interpretation would discourage a second county from initiating a prosecution, because of the administrative problems that would be created. Here, we know from the record that defendant had several charges pending in Will County during two separate periods while this case was pending. Defendant's interpretation would also "be anomalous in the light of section 103-5(e) which allows an additional 160 days to try a defendant after judgment relative to the first charge when that defendant is simultaneously in custody upon more than one charge pending against him in the *same* county." (Emphasis in original.) *Id.* at 536

¶ 58    Finally, although not necessary to resolve this appeal, we comment on defendant's argument that his January 22, 2010, letter to the circuit court clerk constituted notice to Kendall County and that the State thus was "all but reckless or negligent" in "not acting more promptly so as to protect Mr. Wigman's speedy trial rights." We could simply disregard this argument because there is no authority cited for it (Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008) (argument shall contain citation of authority)). However, this argument is not only unsupported, it is completely at odds with decades of settled precedent.

¶ 59    First, it is well established that "delay is occasioned by the defendant" if the defendant's acts caused or contributed to the delay, or created the necessity for postponement. See *People v. Fosdick*, 36 Ill. 2d 524, 529 (1967); *People v. Collins*, 382 Ill. App. 3d 149, 161 (2008). Here, defendant claims that the crucial delay was from January 5, 2010, to April 29, 2010, the next court date. Where there are two reasons for a delay, one attributable to the State and the other to the defendant, the fact that the delay was partially attributable to the defendant is sufficient to toll the term. *Ortiz*, 313 Ill. App. 3d at 900.

¶ 60    Second, the constructive-notice argument is equally worthless. It is abundantly clear that the circuit court clerk's office is not an arm of the State for purposes of filing documents

purportedly intended to restart a speedy-trial term. *People v. Dotson*, 136 Ill. App. 3d 356, 359 (1985). It is the State's Attorney who has the responsibility to commence and prosecute all actions that concern the people of the state or the county. *People v. Pankey*, 94 Ill. 2d 12, 16 (1983). The constructive-notice theory that defendant proposes would require the prosecutor to monitor "the files and docket sheets in criminal cases on almost a continuous basis." *People v. Jones*, 84 Ill. 2d 162, 169 (1981). This argument was specifically rejected by the Illinois Supreme Court in *Jones*. *Id.* Likewise, in *People v. Bonds*, 401 Ill. App. 3d 668 (2010), we followed *Jones*. Defendant's attempts to distinguish *Jones* and *Bonds* because those cases dealt with the demands themselves rather than notice of the defendants' whereabouts is disingenuous. The result would be the same because defendant's letter was supposedly intended to restart the term. As the courts in *Jones* and *Bonds* noted, "[t]o permit a defendant to invoke his statutory right to a speedy trial without notifying the prosecution would allow him to exploit the possibility that the State will unwittingly fail to bring him to trial within the prescribed period." *Jones*, 84 Ill. 2d at 168; *Bonds*, 401 Ill. App. 3d at 672. We trust that in the future counsel will comply with the rules.

¶ 61                                III. CONCLUSION

¶ 62        We determine that defendant was not denied a speedy trial, because he never made an effective demand. Therefore, there was no ineffective assistance of counsel for failing to move for discharge and there was no plain error.

¶ 63        Accordingly, the judgment of the circuit court of Kendall County is affirmed.

¶ 64        Affirmed.

¶ 65        JUSTICE HUTCHINSON, dissenting.

¶ 66        Because I believe that defendant filed a valid speedy-trial demand, that he did not waive that demand, and that the delay between January 22, 2010, and April 29, 2010, should not be attributed to him, I would conclude that defendant did not receive a trial within the speedy-trial term. Therefore, I would reverse.

¶ 67                             I. Speedy-Trial Demand

¶ 68        Defendant posted bail in Kendall County and was not in Kendall County custody when he filed his speedy-trial demand on November 21, 2008. Therefore, he properly filed a speedy-trial demand under section 103-5(b) of the Code (725 ILCS 5/103-5(b) (West 2006)).

¶ 69        In *People v. Wentlent*, 109 Ill. App. 3d 291 (1982), the defendant was charged on October 22, 1980, in Du Page County with felony theft, and a warrant was issued for his arrest. *Id.* at 292. On February 14, 1981, Cook County filed unrelated charges, and the defendant was incarcerated in the Cook County jail. Those charges were dropped on March 19, 1981, and the defendant was remanded to the Joliet Correctional Center for a six months on unrelated charges. *Id.* On April 28, 1981, the defendant filed in Du Page County a demand for a speedy trial. *Id.* Thereafter, the defendant argued that the charges in Du Page County should have

been dropped because he was not tried within 120 days of March 19, 1981–the date the Cook County charges were dropped–pursuant to section 103-5(a) of the Code. *Id.* at 293. According to the defendant, Du Page County lodged a "detainer" against him on March 9, 1981, while he was in custody in Cook County. The State countered that the speedy-trial term did not begin to run until April 28, 1981, when the defendant made his speedy-trial demand, and that the State had 160 days to bring him to trial. *Id.*

¶ 70     On appeal, the reviewing court initially determined that while he was in the Cook County jail the defendant was served with the Du Page County complaint but not the arrest warrant. *Id.* at 299. The reviewing court concluded:

"[The defendant] in the case at bar was incarcerated in Cook County awaiting trial, and was, therefore, subject to the rule that he cannot be in custody for the second county until the proceedings in the first county have ended and he is either held by or for the second county on the subject charges." *Id.* at 297.

¶ 71     The reviewing court further concluded that, because the defendant was not served with the arrest warrant prior to the termination of the proceedings in the first county, he was not deemed in custody for the second county even upon termination of the first action. *Id.* at 298. In reaching its determination, the reviewing court noted:

"We do not consider the service of a complaint without a warrant sufficient to render defendant 'in custody' upon termination of the Cook County proceedings. *** *We are directed to no case in which the service of the complaint alone is treated as the equivalent of the service of an arrest warrant under the circumstances here.* Moreover, neither Cook County nor Du Page County officials took any action upon the previously issued, but unserved, warrant when defendant was released from Cook County." (Emphasis added.) *Id.*

¶ 72     Because the defendant was not "in custody" in Du Page County on March 19, 1981, the intrastate detainers act applied as a result of the defendant's incarceration in the Joliet Correctional Center on unrelated charges. *Id.* at 299 (citing Ill. Rev. Stat. 1981, ch. 38, ¶ 1003-8-10).

¶ 73     Pursuant to *Wentlent*, when a defendant is in custody in one county for unrelated charges and there is an unserved arrest warrant in another county, the defendant is not "in custody" in the second county until the warrant is served. Thus, in *Wentlent*, the defendant was not "in custody" in Du Page County upon being released from the Cook County jail, because the Du Page County warrant remained unserved.

¶ 74     Similarly, in this case, defendant was in custody only in Will County. Although the record reflects that the trial court issued a warrant with increased bail on March 6, 2008, the record fails to reflect that the State ever served that warrant on defendant. The record indicates that, on June 5, 2008, the trial court entered an order reflecting that the warrant remained outstanding. There is no further indication in the record that the State either served or undertook any further action to serve the March 6, 2008, arrest warrant on defendant before he filed his speedy-trial demand on November 21, 2008. My conclusion is consistent with the purpose of the speedy-trial statute, which should be liberally construed so as to give effect to the constitutional right to a speedy trial. See *Arnhold*, 115 Ill. 2d at 383. Defendant

remained out on bail in Kendall County and his speedy-trial demand was, therefore, proper under section 103-5(b) (see 725 ILCS 5/103-5(b) West 2006)).

¶ 75                                        II. Waiver

¶ 76        I would also hold that defendant's failure to appear in Kendall County on January 5, 2010, did not waive his November 21, 2008, speedy-trial demand. This court recently addressed waiver of a speedy-trial demand in *Kohler*, 2012 IL App (2d) 100513. In *Kohler*, the defendant failed to appear in court on the date the trial was set to begin. *Id.* ¶ 9. The defendant's attorney informed the trial court that, earlier in the day, the defendant contacted her and advised that he was ill. The defendant's attorney called the prosecutor to inform him of the defendant's illness. *Id.*

¶ 77        On appeal, this court concluded that the defendant's failure to appear did not waive his speedy-trial demand pursuant to section 103-5(b) of the Code. In reaching our determination, we concluded that, although the defendant failed to appear, his attorney appeared. *Id.* ¶¶ 34-35. The defendant's counsel moved for a continuance, which the trial court granted instead of issuing a warrant. *Id.* ¶ 35. We distinguished situations in which a defendant fails to appear and the trial court issues a bond-forfeiture warrant from those in which a defendant is granted a continuance. *Id.* ¶¶ 37-38.

¶ 78        I would extend the holding in *Kohler* to the circumstances here. While I recognize that the trial court in this case issued a bond-forfeiture warrant after defendant failed to appear on January 5, 2010, the record reflects that the warrant was issued "over PD objection." When a defendant fails to appear but is represented by counsel who objects to the trial court issuing a bond-forfeiture warrant, the defendant does not waive his speedy-trial demand. To conclude otherwise would be tantamount to leaving the determination of whether a defendant waives a speedy-trial demand to the discretion of the trial court. In other words, if the trial court decides to grant a continuance when a defendant does not appear but counsel does, the demand will not be waived. Conversely, if the trial court decides to issue a bond-forfeiture warrant over counsel's objection, the demand will be waived. Such a result would be contrary to the spirit and purpose of the speedy-trial statute, which is to be construed liberally so as to give effect to the constitutional right to a speedy trial. See *Arnhold*, 115 Ill. 2d at 383.

¶ 79                                        III. Delay

¶ 80        Finally, I believe that the delay from January 22, 2010, through April 29, 2010, should not be attributed to defendant. In *People v. Cichanski*, 81 Ill. App. 3d 619 (1980), at a hearing on December 12, 1978, the trial court suggested a trial date of March 7, 1979, with the defendant's counsel noting that the suggested date was "satisfactory." *Id.* at 620-21. The suggested date, however, was outside of the 160-day limit for a speedy trial, which expired on January 3, 1979. *Id.* at 621. The reviewing court held that the delay beginning December 12, 1978, could not be attributed to the defendant, because his attorney agreed to the date suggested by the trial court and "[t]he record tells us nothing further." *Id.* at 622. The reviewing court noted that not charging the defendant with the delay was consistent with the

-18-

rule of liberal construction applicable to section 103-5 of the Code and that the State, not the defendant, bore the burden of bringing the defendant to trial within the statutory term. *Id.*

¶ 81　　Pursuant to *Cichanski*, if there is a delay resulting from a mistake by the trial court, a defendant cannot be charged with the delay absent an affirmative showing in the record that the defendant contributed to the delay. In this case, defendant was out on bail in Kendall County when he failed to appear on January 5, 2010, as a result of being taken into custody in Will County on December 30, 2009. Defendant sent two letters dated January 18, 2010, addressed to the Kendall County circuit court clerk, which were filed on January 22, 2010. The return address on the envelope specified that defendant sent the letters from the Will County Adult Detention Facility. One of the letters asked the clerk to "please send me a copy of my court docket sheet for my current pending D.U.I. case. Case # 07 DT 308." Thus, the record reflects that defendant exhibited a clear intent for his Kendall County matter to proceed, despite being in custody in Will County.

¶ 82　　Similar to the reasoning in *Cichanski*, the record here does not indicate whether the circuit court clerk attempted to take any further action on defendant's January 18, 2010, request for the docket sheet. Because the record does not indicate that the clerk answered defendant's January 22, 2010, request for the docket sheet, or that any further actions were taken to resume the proceedings once the clerk received the letters, I would not charge defendant with the delay between January 22, 2010, and April 29, 2010.

¶ 83　　I am keenly aware of the administrative challenges that trial courts in criminal divisions encounter in managing dockets. However, the purpose of the speedy-trial statute is to give effect to a *defendant's* constitutional right to a speedy trial. I believe that when a defendant requests a docket sheet in writing, indicating a clear intent for the matter to proceed, the trial court must take notice of that request. Any time between receipt of such a request and the action taken should not be attributed to a defendant absent an affirmative showing in the record that the defendant contributed or agreed to the delay.

¶ 84　　For the foregoing reasons, I respectfully dissent.