No. 2--05--0830                                        filed: 10-13-06

IN THE
APPELLATE COURT OF ILLINOIS
SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 04--CM--4579 |
| CONSTANTINE J. STANITZ, | ) ) ) | Honorable Brian R. McKillip, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, Constantine J. Stanitz, was charged with attempted unlawful possession of a controlled substance (720 ILCS 5/8--4(a) (West 2004); 720 ILCS 570/406(b)(3) (West 2004)). The State appeals an order dismissing the charge with prejudice, based on a finding that the defendant was denied his statutory right to a speedy trial (see 725 ILCS 5/103--5(a) (West 2004)). The State argues that the trial court erred in holding that the speedy-trial term continued to run after the State voluntarily surrendered custody of the defendant to federal authorities in Cook County. We affirm.

On July 26, 2004, the defendant was charged by information with attempting to obtain a drug prescription by using a false name. At some point before September 30, 2004, he was arrested and jailed. An order dated August 10, 2004, appointing the public defender to represent the defendant, noted that the defendant was in custody. On September 30, 2004, the defendant filed a demand for a speedy trial. The demand stated that he was incarcerated.

On April 11, 2005, the defendant moved to dismiss the charge. He relied on section 103--5(a) of the Code of Criminal Procedure of 1963 (Code), which, as pertinent here, states, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103--5(a) (West 2004). The motion alleged the following facts. On January 4, 2005, the defendant answered ready for trial, but, on the State's motion, the trial was continued to January 26, 2005. (The common-law record confirms this allegation.) On January 18, 2005, federal officials removed the defendant from the Du Page County jail to the Metropolitan Correctional Center in Chicago to await trial on a federal charge. Thus, he could not appear for trial on January 26, 2005, which was the 119th day after he filed his speedy-trial demand. However, the defendant remained in the State's custody because he had never been released on bail. Therefore, he was not brought to trial within the statutory 120-day term.

In response, the State argued that it lost custody of the defendant when he was transferred to Cook County to await trial on the federal charge. The State contended that the state speedy-trial term was tolled until the federal case was resolved and the defendant was returned to the State's custody.

On May 26, 2005, the trial court held a hearing on the defendant's motion. The court concluded that, because the defendant had not been tried within 120 days, he had been denied his statutory right to a speedy trial. Therefore, the court dismissed the charge.

The State moved to reconsider. The State's motion alleged that, on January 18, 2005, "federal officials removed the defendant from the Du Page County Jail and placed him in custody" in

Cook County pending the disposition of the federal charge, making him "unavailable" for the January 26, 2005, trial date in this case. The State cited cases in which defendants who were initially taken into custody on federal charges were later charged with state offenses. See People v. Arsberry, 242 Ill. App. 3d 1034 (1993); People v. Neumann, 148 Ill. App. 3d 362 (1986). In each of these cases, the court held that the state speedy-trial term did not commence until the federal case was resolved and the defendant was in state custody. Relying on these opinions, the State asserted that the defendant's rights under section 103--5(a) of the Code would not attach until the federal prosecution was resolved and the State regained custody of him.

In response, the defendant argued that Arsberry and Neumann were distinguishable because, in each case, the defendant was already in custody on a federal charge before the State ever charged him or took him into custody. Therefore, when the defendant in Arsberry or Neumann was taken into federal custody, section 103--5(a) of the Code had not been triggered. Thus, Arsberry and Neumann did not address the issue here: whether the State's voluntary surrender of the defendant to federal authorities tolled the speedy-trial term that had already commenced. In contending that it did not, the defendant reasoned that, if the State chose to relinquish custody of him, the delay resulting from its choice was not chargeable to him.

At a hearing on the State's motion, the defendant noted that he had been in the Du Page County jail when he was released to the federal authorities. He claimed that he had been in custody continuously since September 30, 2004. The trial court denied the State's motion to reconsider, explaining that the speedy-trial clock began to run on September 30, 2004, and that, because any delay resulting from the State's decision to surrender the defendant to federal custody was not chargeable to him, it did not toll the 120-day period. The State timely appealed (see Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(a), eff. February 1, 2005).

On appeal, the State again argues that, when the defendant was transferred from the Du Page County jail to Cook County to await trial on the federal charge, the 120-day speedy-trial term of section 103--5(a) of the Code was tolled. Because the construction and the application of the statute to undisputed facts raise questions of law, our review is de novo. See People v. Wooddell, 219 Ill. 2d 166, 171 (2006). We hold that the voluntary surrender of the defendant to federal authorities did not toll the speedy-trial period. Therefore, the State did not bring the defendant to trial within 120 days, and the trial court was required to dismiss the charge with prejudice.

We note that, at the trial level, both parties and the court apparently assumed that the speedy-trial clock began to run when the defendant filed his demand on September 30, 2004. However, this was probably incorrect. A formal demand is required only under section 103--5(b) of the Code, which entitles a defendant who is on bail or recognizance to be tried within 160 days from the date that he demands trial. 725 ILCS 5/103--5(b) (West 2004). A defendant who is in custody is automatically entitled to be tried within 120 days from the date that he was taken into custody; no demand is necessary. 725 ILCS 5/103--5(a) (West 2004); People v. Cooksey, 309 Ill. App. 3d 839, 843 (1999). However, the 120-day term must be one continuous period of incarceration. 725 ILCS 5/103--5(a) (West 2004). The burden is on the State to try the case within the time specified, and the defendant has no burden to invoke the right to a speedy trial. People v. Staten, 159 Ill. 2d 419, 424-25 (1994).

The defendant was incarcerated at least as early as August 10, 2004. Conceivably, the continuous 120-day period of incarceration ended in December 2004, as the sole continuance before then was granted on the State's motion. Assuming that the statutory period expired in December 2004, the charge should have been dismissed then, and we would have to affirm the judgment without considering the effect of the State's surrender of the defendant in January 2005.

However, we choose not to affirm the trial court on this basis. At the trial level, the defendant never contended that he was continuously incarcerated for 120 days commencing August 10, 2004, or even that the speedy-trial clock started to run before September 30, 2004. The defendant's failure to raise this argument deprived the State of any opportunity to prove that the speedy-trial clock did <u>not</u> start to run before September 30, 2004. Therefore, although the record strongly suggests that the defendant was entitled to a dismissal of the charge even before he was surrendered to federal authorities in January 2005, we shall not decide this matter. See <u>Hux v. Raben</u>, 38 Ill. 2d 223, 225 (1967) (appellate court will not consider theories not raised at trial level if proof might have been introduced at trial level to refute or overcome them).

We now turn to the State's argument on appeal. The State appears to concede that the defendant started section 103--5(a)'s clock running on September 30, 2004, when he filed his speedy-trial demand. However, the State contends that the voluntary surrender of the defendant to federal authorities on January 18, 2005, tolled the statutory period and that the speedy-trial clock will not restart until the federal charge is resolved. Relying in part on <u>People v. Swartz</u>, 21 Ill. 2d 277 (1961), the defendant responds that the State was obligated to bring him to trial within 120 days and that it could not evade this obligation by surrendering him to the federal authorities. For the reasons that follow, we agree with the defendant.

The speedy-trial statute "must be liberally construed and its salutary provisions cannot be frittered away by technical evasions." <u>People v. Fosdick</u>, 36 Ill. 2d 524, 528 (1967). The supreme court applied this rule of liberal construction in <u>Swartz</u>, in which the defendant contended that he had been denied a speedy trial on two forgery charges. On January 29, 1959, while the defendant was awaiting trial on an unspecified state charge in Cook County, a federal court sentenced him to

imprisonment on a federal charge. Swartz, 21 Ill. 2d at 278-79. However, the federal government allowed the State to retain custody of the defendant until it had finished its proceedings against him. Swartz, 21 Ill. 2d at 282. On February 20, 1959, the defendant was indicted on the forgery charges, and, on February 27, 1959, he was sentenced to jail for a year on a different state charge. On March 6, 1959, the forgery charges were stricken with leave to reinstate. Swartz, 21 Ill. 2d at 279.

On March 20, 1959, the defendant was removed to a federal prison in Michigan to serve his sentence on the federal charge. On December 28, 1959, after he had been released from federal prison, the forgery charges were reinstated. On February 15, 1960, the defendant moved to dismiss the charges, asserting that the State had violated a statute requiring that one who was placed into custody on a criminal charge be tried within four months after the commitment, unless the delay was attributable to him. Swartz, 21 Ill. 2d at 279.

The supreme court agreed with the defendant that he was entitled to have the charges dismissed, even though fewer than four months had elapsed between the reinstatement of the charges and the filing of the defendant's motion to dismiss, and even though the defendant had been continuously in state custody for fewer than four months. The court relied on the speedy-trial statute and on the "want of prosecution" statute. As pertinent, the latter provided that, when a person was imprisoned (or, as the court held, jailed) in Illinois, and, during his term of incarceration, another charge was pending in the county in which he was sentenced, he had to be brought to trial on the untried charge within four months, unless he caused the delay. Swartz, 21 Ill. 2d at 280. Applying the two statutes, the supreme court ruled that the defendant was entitled to have the forgery charges dismissed because more than four months had elapsed between the filing of the original forgery charges and the presentation of the defendant's speedy-trial motion.

The court recognized that the defendant was transferred to federal prison within a month after the forgery charges were initially brought and that he had been incarcerated there until about 2½ months before he moved to dismiss the forgery charges. Nonetheless, the court determined that the transfer of the defendant to the federal prison did not toll the four-month period. The defendant was incarcerated for more than four months after the initial forgery charges were filed, and the delay in excess of the statutory period was not attributable to him. Neither the voluntary dismissal and reinstatement of the forgery charges, nor the transfer of the defendant to the federal prison, freed the State of its obligation to provide the defendant a speedy trial. In the supreme court's words:

"The record discloses that the Federal authorities had consented to the State's retention of custody over the defendant and that they would not remove him to the Federal penitentiary until the State had terminated [its] actions against him. In such a case, the State cannot evade the statute by refusing to prosecute the defendant and by voluntarily relinquishing control of him to the Federal authorities." (Emphasis added.) Swartz, 21 Ill. 2d at 282.

Swartz did not construe or apply the present speedy-trial statute. However, the supreme court later cited Swartz in stating that section 103--5(a)'s term is not tolled by one county's "voluntary relinquishment of the prisoner to another county." People v. Christensen, 102 Ill. 2d 321, 330 (1984). Equally important, the policy considerations behind Swartz apply fully to the present statute, which, as we have noted, must not be construed narrowly. If the State is free to choose whether to surrender a defendant to federal authorities, then its decision to do so should not enable it to evade its responsibility to try the defendant within the statutory period. Moreover, any delay occasioned entirely by the State's own choice cannot reasonably be said to have been "occasioned by the defendant." 725 ILCS 5/103--5(a) (West 2004).

Courts in other jurisdictions have reasoned similarly in holding that a statutory speedy-trial term is not tolled by the voluntary surrender of the defendant to a different jurisdiction. In People v. Wimer, 43 Colo. App. 237, 604 P.2d 1183 (1979), the defendants contended that the State had violated a law requiring that a defendant be tried within six months after pleading not guilty. On May 27, 1976, both defendants pleaded not guilty. While they were awaiting trial, the Governor of California sought their extradition, and, in July and September 1976, the Governor of Colorado voluntarily surrendered them. The California authorities agreed to return the defendants to Colorado by October 27, 1976, the originally scheduled trial date. However, on October 25, 1976, in the Colorado case, the trial court granted a prosecution motion to continue the trial to February 1, 1977. The defendants moved to dismiss the charges, contending that they had not been tried within six months after they pleaded not guilty. The trial court denied the motion. The defendants' trial began May 4, 1977. They were convicted and appealed. Wimer, 43 Colo. App. at 238, 604 P.2d at 1184.

The court of appeals held that the defendants had been denied their statutory right to speedy trials. The court rejected the State's contention that the delay between the date that each defendant was surrendered to California and the date that he was returned to Colorado should be excluded from the speedy-trial calculus. The State contended that the delay was chargeable to the defendants because "their presence for trial could not be obtained." Wimer, 43 Colo. App. at 239, 604 P.2d at 1185. However, the court noted that, under the Colorado extradition statute, the Governor had the discretion to decide whether to surrender the defendants to California or hold them in Colorado. Thus, the delay that resulted was attributable to the State. Wimer, 43 Colo. App. at 239, 604 P.2d at 1185.

In State v. Steele, 261 Neb. 541, 624 N.W.2d 1 (2001), the issue was whether, under the Nebraska speedy-trial statute, the defendant or the State was responsible for the delay occasioned by the extradition of the defendant to another jurisdiction. The statute required that a defendant be tried within six months after he was charged, but the period was tolled for delays " 'resulting from the absence or unavailability of the defendant.' " Steele, 261 Neb. at 549-50, 624 N.W.2d at 7, quoting Neb. Rev. Stat. §29--1207(4)(d) (1993). The defendant was charged on April 16, 1999. The State of Colorado sought to extradite him to face pending charges there. On May 24, 1999, after the defendant waived extradition, Nebraska voluntarily surrendered him to Colorado. Several times before November 2, 1999, the defense in the Nebraska case answered ready for trial, but each time the case was continued. On November 2, 1999, the defendant waived extradition and agreed to be returned to Nebraska, but he was not returned until November 29, 1999. On December 2, 1999, he moved to dismiss on speedy-trial grounds. The trial court denied the motion, and he appealed. Steele, 261 Neb. at 542-44, 624 N.W.2d at 3-4.

The Nebraska Supreme Court reversed. After excluding the delays that were clearly attributable to the defendant, the court concluded that the six-month period expired on November 2, 1999. Because the statutory exception for delays attributable to the defendant's unavailability applied only if the defendant's unavailability was attributable to him and not the State (Steele, 261 Neb. at 550, 624 N.W. 2d at 8), he was entitled to discharge unless the delay between November 2, 1999, and December 2, 1999, was attributable to him. Relying on Wimer, the court reasoned that the entire delay between May 24, 1999, when the defendant was transferred to Colorado, and November 29, 1999, when he was returned to Nebraska, was chargeable to the State. The crucial consideration was that, because the State's extradition statute allowed but did not require the State to surrender the

defendant while the Nebraska prosecution was pending, the defendant could not be charged with the delay that resulted from the State's own decision not to hold the defendant until trial. Steele, 261 Neb. at 551-52, 624 N.W.2d at 8-9.

The reasoning of Wimer and Steele applies here. When the federal authorities sought custody of the defendant, he was already in the State's custody, and his statutory right to a speedy trial had been triggered. The State voluntarily surrendered the defendant, knowing full well of his statutory entitlement to a speedy trial. Thus, as in Swartz, Wimer, and Steele, the delay occasioned by the State's own decision to surrender the defendant must be charged to the prosecution and not the defendant. Hence, the speedy-trial clock continued to run after the surrender, and the defendant was denied his right to a speedy trial.

Neumann and Arsberry, on which the State relies, are distinguishable. In Neumann, the defendant was charged in October 1982 and arrested in November 1982 on several state charges. At the time of his arrest, he was already in federal custody, awaiting sentencing on a federal conviction. On November 12, 1982, the defendant demanded a speedy trial on the state charges. However, he was kept in federal custody until late February 1983. His trial began on March 14, 1983. Neumann, 148 Ill. App. 3d at 367. On appeal, he contended that he had been denied his statutory right to a speedy trial. The issue was whether section 103--5(a)'s speedy-trial term started while the defendant was in federal custody. The appellate court held that it did not, explaining that, when the defendant made his speedy-trial demand on November 12, 1982, he was not in state custody. Neumann, 148 Ill. App. 3d at 368.

Neumann's reasoning is sound. As is true now, section 103--5(a) applied only if a defendant was in state custody (see Ill. Rev. Stat. 1981, ch. 38, par. 103--5(a)). Thus, its 120-day term could

not have commenced before the State ever obtained custody of the defendant. However, <u>Neumann</u> simply says nothing about whether a defendant who <u>has</u> been taken into state custody, and thus has started section 103--5(a)'s speedy-trial clock running, may be charged with the delay that results when the State <u>later</u> transfers custody of him to another jurisdiction.

In <u>Arsberry</u>, the defendant was arrested on October 10, 1989; his trial was originally set for July 9, 1990; and, after further delays that he conceded were attributable to him, he was tried on October 16, 1990. The <u>Arsberry</u> opinion notes that, on three dates in December 1989, the defendant failed to appear in court because he was in federal custody. The opinion then states, "This term inclusive of the above dates is <u>not</u> charged to defendant. The 120-day statutory period does not run while the defendant is in the custody of the Federal government. (<u>People v. Neumann</u> (1986), 148 Ill. App. 3d 362, 368.)" (Emphasis added.) <u>Arsberry</u>, 242 Ill. App. 3d at 1039. This passage requires clarification, as the two quoted sentences contradict each other. If the time that the defendant spent in federal custody was <u>not</u> charged to him, then it would have been charged to the State, and the 120-day period would have continued to run. Apparently, the <u>Arsberry</u> court intended to say that the period during which the defendant was in federal custody could not be charged to the <u>State</u>. This holding would be consistent with <u>Neumann</u>, assuming that the defendant had been taken into federal custody before the State ever obtained custody of him. Curiously, the <u>Arsberry</u> opinion does not say whether the defendant was taken into federal custody before he was taken into state custody, or whether the State voluntarily surrendered custody to the federal government.

Insofar as <u>Arsberry</u> might be read to set out a blanket rule that section 103--5(a)'s term is tolled <u>whenever</u> a defendant is committed to federal custody, we elect not to follow it. Not only would such a holding be inconsistent with <u>Swartz</u>, but it would also go beyond anything that is

implied by <u>Neumann</u>. Moreover, allowing the State to stop the speedy-trial clock by voluntarily surrendering custody of the defendant instead of holding him for trial would violate <u>Fosdick</u>'s command to construe the speedy-trial statute liberally so that its protections are not "frittered away" by "technical evasions." <u>Fosdick</u>, 36 Ill. 2d at 528. In any event, the <u>Arsberry</u> court relied primarily on its conclusion that most of the delays at the trial level were attributable to the defendant. The basis of its holding that the period that the defendant was in federal custody was not attributable to him is so unclear that the opinion cannot be taken as authority for any rule of law not already stated in <u>Neumann</u>.

Under <u>Swartz</u> and the persuasive foreign authority that we have cited, the State could not evade its speedy-trial obligations by its own decision to surrender the defendant to the federal authorities. Because the voluntary surrender did not toll the speedy-trial term of section 103--5(a) of the Code, the defendant was not brought to trial within the time required by the statute, and the trial court properly dismissed the charge with prejudice.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY and KAPALA, JJ., concur.