NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230741-U

NO. 4-23-0741

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| D'MARLO A. REED, | ) | No. 22CF1977 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Ronald J. White, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding defendant was not denied his statutory or
constitutional right to a speedy trial.

¶ 2    Defendant, D'Marlo A. Reed, appeals his conviction of aggravated driving under

the influence (DUI) (625 ILCS 5/11-501(d)(1)(G) (West 2022)). Defendant was arrested on

August 13, 2022, in Winnebago County and charged with multiple drug offenses and multiple

counts of DUI. He posted bond and was subsequently taken into custody by federal authorities

based on a parole violation stemming from the Winnebago County charges. On September 12,

2022, while in federal custody, defendant surrendered his bond. Federal authorities expressed an

unwillingness to return defendant to Winnebago County for trial until after the federal proceedings

were concluded.

¶ 3        On March 2, 2023, defendant filed a motion to dismiss and discharge, contending he was not timely brought to trial as required by section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(a) (West 2022)). Defendant argued he was continually in state custody, at least as of the date that he withdrew his bond, and the State failed to bring him to trial within 120 days. The trial court found defendant was in federal custody and the time period would not run until he was returned to state custody.

¶ 4        On appeal, defendant argues the trial court erred because the State failed to timely bring him to trial in violation of both his statutory and constitution speedy-trial rights. We affirm.

¶ 5                                    I. BACKGROUND

¶ 6        On August 13, 2022, law enforcement took defendant into custody and, on August 15, 2022, charged him with multiple counts of DUI and multiple drug offenses. On August 16, 2022, defendant posted bond. At some point between August 13 and 16, 2022, a federal parole hold was placed on defendant. The record indicates that, immediately after posting bond, defendant was taken into federal custody on August 16, 2022, and later transported to a facility in another county.

¶ 7        At an August 26, 2022, hearing regarding forfeiture of currency, the trial court noted defendant was not present. The court asked if defendant was "out of custody," and the State replied, "Yes." The court also asked if the clerk of the court could check whether defendant posted bond, and the bailiff replied that the jail did not have defendant in custody. Defense counsel stated, "I believe he's out of custody." The clerk of the court reported defendant posted bond.

¶ 8        On September 9, 2022, the State indicted defendant on six drug charges and two counts of DUI. On September 12, 2022, defendant filed a motion to withdraw his bond, stating he

had been "re-arrested and returned to custody" and seeking a return of the bond and credit for time spent in custody. The motion did not state the jurisdiction that "re-arrested" him.

¶ 9          On September 21, 2022, the trial court convened for a summary suspension hearing. Defendant was again absent, and the court stated defendant was out of custody and had posted bond. The court told defense counsel defendant was required to be present for the summary suspension hearing. The court stated, "I'll leave it up to you to prepare a writ if you know where he is located, all right?" Counsel told the court he had a motion to withdraw the bond, and the court stated, "In effect he becomes in custody on this." The court asked for a written order withdrawing the bond and stated, "[H]e is in custody now." The court noted the time until the next hearing was attributable to defendant for speedy-trial purposes. The court further noted the time for the summary suspension hearing was running and said, "Good luck on getting him here. Again, I say that respectfully. The Federal authorities, they're less than cooperative when you need somebody here." The court further stated:

> "I'm not going to wait for the Federal authorities to do whatever they have to do and whatever they have pending. This matter is going to proceed to a trial or a plea or a dismissal. I'm not waiting for the Feds. I have to clear my cases. And especially if this is in another Federal court somewhere down state, we need to get him here. If there is a demand for speedy trial, they're going to have to bring him. But I'll leave it up to the attorneys."

The court again noted, "[H]e is in custody on this now," but it also stated, "[I]t's kind of a strange issue because he is in Federal custody." The court entered a written order withdrawing the bond retroactive to September 12, 2022.

- 3 -

¶ 10    On October 7, 2022, defendant did not appear for the summary suspension hearing. The following colloquy then occurred:

"THE COURT: Where is [defendant]?

[DEFENSE COUNSEL]: Judge, [defendant], as you might recall, was in custody here in the Winnebago County Jail and was removed from the Winnebago County Jail and taken to Benton, Illinois. It's my belief—

THE COURT: Did he post bond in this case?

[DEFENSE COUNSEL]: No. He had bond posted and was rearrested. We withdrew the bond the last time we were here. I don't think the order maybe caught up with the—it didn't get filed. But the last time we were here we ordered that bond would be withdrawn effective September 12th. The jail, I believe—I think he's in federal custody, but he tells me that he's currently being held in the Franklin County Jail in Benton, Illinois.

THE COURT: So he has federal charges pending.

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: So what I think happened here was he was in custody with the Feds here. Is that correct?

[DEFENSE COUNSEL]: That's correct.

THE COURT: So when you made the motion to vacate his bond—

[DEFENSE COUNSEL]: Yes.

THE COURT: He was in custody here.

[DEFENSE COUNSEL]: Yes.

THE COURT: So the Feds—and our corrections allowed the Feds to take him somewhere else.

[DEFENSE COUNSEL]: Correct.

THE COURT: They should never have done that because he is in custody here. And again, the Feds could have kept him here so now—I'm not going to wait for the Feds. So if you're going to proceed, you writ him back here. Prepare a writ right away. I am not going to wait for the Feds. Our corrections should never have released him. Whatever the Feds say, they do. They shouldn't do that. The Feds just picked him up and took him. We have matters pending here.

Having said that, we have a statutory summary suspension here, so that can't go forward."

Defense counsel then waived the 30-day requirement for a summary suspension hearing and asked to continue the matter to try to reach an agreement with the State. The following colloquy then occurred:

"THE COURT: Good. Why don't the attorneys—we'll give you a status date.

[Assistant state's attorney], if you are going to proceed on here, I'm going to ask you, respectfully, to issue a writ to the Feds and have him brought here. Okay?

[ASSISTANT STATE'S ATTORNEY]: Yes, [Y]our Honor.

THE COURT: If he demands speedy trial, it will run. So you're on notice here that once the defendant demands speedy trial, he is in custody now, just because he is with the Feds doesn't toll it. You're responsible to get him here.

[ASSISTANT STATE'S ATTORNEY]: I understand, [Y]our Honor.

THE COURT: Not your fault. That's why the Feds—they do what they want regardless of what we have here, and it's unacceptable. Having said that, good luck."

The trial court later told defense counsel:

"[Y]ou might want to start working on getting him here. And good luck getting him here from the Feds when he is not housed here in our county. So I'll leave it up to you. You know that he's in custody here. If you demand speedy trial on his behalf, it will be running. Okay?"

¶ 11        On November 2, 2022, the parties appeared remotely. The trial court referred to defendant being "in custody in federal court." Defense counsel stated he wished to file a speedy-trial demand, and the following colloquy occurred:

"THE COURT: Well, is he out of custody on this matter?

[DEFENSE COUNSEL]: No. He's in.

[ASSISTANT STATE'S ATTORNEY]: So he had posted—[defense counsel] filed—

He had posted bond and then got sent to the Illinois Department of Corrections for a parole violation. [Defense counsel] filed a motion to—

THE COURT: Withdraw.

[ASSISTANT STATE'S ATTORNEY]:—withdraw his bond.

THE COURT: All right. He's in custody.

I'd like the record to reflect that [defense counsel], on behalf of his client, [defendant], demands a speedy trial; so we have a demand for a speedy trial."

The court set trial for January 23, 2023.

¶ 12        On January 13, 2023, the State filed a superseding bill of indictment, charging defendant with six drug offenses, two counts of DUI, and two counts of aggravated DUI. On January 20, 2023, the State moved for a continuance. In the motion, the State noted defendant posted bond on August 16, 2022. The State then wrote defendant was taken into federal custody on September 16, 2022, on "US Marshals and Illinois Department of Corrections holds." However, the record indicates defendant was detained based on a parole hold on August 16, 2022. Sometime thereafter, perhaps on September 16, 2022, defendant was actually transported by federal authorities from the Winnebago County jail to a facility in another county. The defense at times stated defendant arrived in the other county on September 20, 2022. The State wrote that federal authorities had advised they would maintain custody of defendant and would not release him to the State until the conclusion of the federal proceeding, which was set for February 2023. The trial court granted the motion over defendant's objection and attributed the delay to the State for speedy-trial purposes over the State's objection.

¶ 13        On February 10, 2023, defense counsel told the trial court there were "speedy trial questions" in the case and noted the State believed the speedy-trial period had not yet started to run. Defense counsel indicated his disagreement with that position, arguing defendant was in state custody and the speedy-trial term had been running at least since the time defendant's bond was withdrawn. The court expressed frustration with the difficulty in getting defendant to court, said it was going to look at the filing to determine when the bond was withdrawn, and stated, "Because at that point in there he becomes in custody here."

¶ 14        On March 2, 2023, defendant filed a motion to discharge based on speedy-trial grounds under section 103-5(a) of the Code. The motion did not allege a violation of defendant's

constitutional speedy-trial right. The State filed a response, noting defendant posted bail on August 16, 2022, but remained in jail on both federal and state parole holds and was transported by federal authorities to another county on September 16, 2022. The State alleged federal authorities denied the State's request to regain custody of defendant until the federal proceedings were concluded. The State argued defendant was not in state custody for purposes of the Code. In the alternative, the State argued any delay was occasioned by defendant because, but for the parole hold caused by his own actions, he would be available for trial.

¶ 15    On March 29, 2023, the trial court held a hearing on the motion. Defendant testified he relied on the court's previous representations that he was in state custody and the speedy-trial time was running. Defendant stated he agreed to continuances in the federal case in order to resolve the issues in the state case before dealing with the parole violations in the federal case, which arose from the state charges. During testimony about the court's previous statement that it would not wait for the federal authorities to move the case along, the court stated:

> "I want to clarify the record, too. I made that statement not knowing that he had posted bond on August 16, 2022. I made that statement because I thought he was in joint custody at that time. In Winnebago County on the pending charges and the parole violation that placed the hold, I thought. And it was never explained to me that he had posted bond. Again, I want to make that clear. I thought he was in dual custody at that time which would kick in the statute which provides for the Agreement on Detainers [(see 730 ILCS 5/3-8-9 (West 2022))]. Okay. But I was incorrect because I was never informed."

¶ 16    The defense argued defendant was in state custody at least as of the date the bond was withdrawn and defendant was not brought to trial within 120 days, as required by section

103-5(a) of the Code. The defense also argued defendant relied on the trial court's representations that defendant was in state custody and that the State failed to act with due diligence to attempt to bring defendant to state court.

¶ 17 The State argued defendant was not in state custody when he posted bond on August 16, 2022, making the 120-day speedy-trial provision inapplicable. Instead, he would not be in state custody until the federal authorities surrendered him to the State, at which time the speedy-trial period would begin to run. The State also noted the agreement on detainers did not apply to a parole hold.

¶ 18 The State presented evidence that it sent a video writ to Franklin County and was told the State had to submit a writ to the U.S. Marshals Service for approval. On November 22, 2022, the State e-mailed Lauren Patterson, an investigator analyst with the U.S. Marshals Service for the Southern District of Illinois, and Jason Batson, the acting supervisor for the U.S. Marshals Service in the Southern District of Illinois, regarding instructions on how to get defendant to state court to comply with the speedy-trial demand. Patterson responded:

> "We do not allow in-person state writs while the prisoner is in Federal custody baring [*sic*] extenuating circumstances, which can be approved at the discretion of our Operations Supervisor Jason Batson. His final revocation hearing is early February 2023 so it will most likely have to be after that."

Batson responded:

> "As I understand it, [defendant's] legal proceeding began in Winnebago County. A Federal detainer was lodged against him. He was granted bail in Winnebago County so the [federal] detainer kicked in sending him into [federal] custody. Had he not been granted bail, his Federal proceedings would have been on hold until the state

- 9 -

case concluded. After consulting with the [assistant United States attorney] on this case, we want to maintain custody of him until after his Federal proceedings conclude. I believe his final revocation hearing is set for 2-7-2023."

Batson also wrote, "Is it possible to accommodate [defendant's] request via video[?] Will the judge consider the fact he is in custody when addressing the defendant's demand for speedy trial[?]" Based on that correspondence, the State did not issue a writ to physically bring defendant to state court.

¶ 19      Following a discussion of the case law, the trial court stated it was initially unaware defendant had posted bond and was out on bail when transported by the federal authorities instead of being sent to the federal authorities by the local sheriff's department. The court then made the following factual findings, stating:

"We have a unique fact situation here and this is what happened. The defendant was in custody, and the defendant posted bond in this case on August 16, 2022, given another court date for September 21st at 8:30 in my courtroom. Unbeknown to the Court, and I don't know if it was even known to you, [defense counsel], unbeknownst to—the prosecutor wasn't aware that he was on Federal parole and there was a parole hold when he was taken into custody. The parole hold was placed on him one day after he was taken into custody. And when he posted that bond or that bond was posted by someone for his release, immediately because of the parole hold he was taken from Winnebago County and placed in a facility in Franklin County, Illinois. He was in Federal custody at that time. And [defense counsel] came back on November 22nd and asked that his bond be withdrawn, meaning give me my money back because I'm in custody down there and might as well be getting

credit for time served if I'm going to serve time on this matter, which happens frequently when defendants have two matters pending. As a matter of fact, for the record, if the defendant was in custody on Charge A and picks up Charge B—if he is custody on A and posted bond on A and he picks up Case B, many times there are two pending, and the attorneys and the defendants ask that he is in custody on A and ask the bond be—he's in custody on that. Many times they plead to Case B and he doesn't get any credit for time, so that's the way. I have no control to say, no, I'm not going to allow you to withdraw his bond, that is up to your discretion."

The court added, "So now we have him down there and there is a demand for speedy trial on November 2nd. I was under the misbelief that the defendant was in custody on both matters because I've had that happen, for the record."

¶ 20        The trial court ultimately found defendant was out of state custody for speedy-trial purposes and was being held by federal authorities. As a result, the court found the 120-day period in section 103-5(a) did not apply. The court further noted any delay in prosecuting defendant under a parole hold was attributable to defendant because, but for his parole violation and resulting removal by federal authorities, he could have been tried within 120 days. The court rejected the application of cases in which the State voluntarily sent a defendant in state custody to federal authorities, noting that, in the case before it, defendant posted bond and was out of state custody when the federal authorities detained him. The court further stated, even though defendant withdrew his bond, he still was not in state custody for speedy-trial purposes. The court stated, "Initially, if he had been in custody here, not posted bond, there might be a different issue." Thus, the court denied defendant's motion to discharge.

¶ 21    The trial court denied defendant's motion to reconsider. Defendant was subsequently acquitted by a jury of all charges except aggravated DUI. Defendant was sentenced to a term of incarceration and did not file a motion for a new trial.

¶ 22    This appeal followed.

¶ 23                    II. ANALYSIS

¶ 24    On appeal, defendant contends both his statutory and constitutional rights to a speedy trial were violated when he was not timely brought to trial. The State contends defendant forfeited the issues by failing to raise them in a motion for a new trial.

¶ 25                    A. Statutory Claim

¶ 26    Defendant first argues he was deprived of his statutory right to a speedy trial under section 103-5(a) of the Code (725 ILCS 5/103-5(a) (West 2022)). In particular, he contends he was in state custody at least as of September 12, 2022, when he withdrew his bond, and he was not brought to trial within 120 days. He further maintains, because the State allowed him to be transported to federal custody, any delay may not be attributable to him.

¶ 27    The State initially contends defendant forfeited the issue by failing to preserve it in a motion for a new trial. Defendant concedes he did not raise the issue in a motion for a new trial but argues ineffective assistance of counsel applies. We conclude the issue was not forfeited.

¶ 28    Our supreme court has held, "where the trial court clearly ha[s] an opportunity to review the same essential claim that [i]s later raised on appeal," the failure to include the claim in a posttrial motion will not result in forfeiture. *People v. Heider*, 231 Ill. 2d 1, 18, 896 N.E.2d 239, 249 (2008); see *People v. Patterson*, 392 Ill. App. 3d 461, 464, 912 N.E.2d 244, 247 (2009) (finding where "the speedy-trial issue was fully considered by the trial court," the defendant's failure to assert the issue in a posttrial motion did not result in forfeiture).

¶ 29    Here, the trial court fully considered defendant's statutory speedy-trial claim in response to defendant's motion for discharge. The court then denied defendant's motion to reconsider. Defendant did not raise anything new regarding the statutory speedy-trial claim on appeal. Accordingly, defendant did not forfeit the issue.

¶ 30    In Illinois, a criminal defendant has both a constitutional and statutory right to a speedy trial. See U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2022). Although section 103-5(a) of the Code implements the constitutional right to a speedy trial, the statutory and the constitutional rights "are not coextensive." *People v. Phipps*, 238 Ill. 2d 54, 65, 933 N.E.2d 1186, 1193 (2010).

¶ 31    Section 103-5(a) of the Code provides, in part:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record. The provisions of this subsection (a) do not apply to a person on bail or recognizance for an offense but who is in custody for a violation of his or her parole, aftercare release, or mandatory supervised release for another offense." 725 ILCS 5/103-5(a) (West 2022).

See Pub. Act 101-652, § 10-255 (eff. Jan. 1, 2023) (replacing the term "bail" with "pretrial release").

Section 103-5(a) also provides, "The 120-day term must be one continuous period of incarceration. In computing the 120-day term, separate periods of incarceration may not be combined. If a

defendant is taken into custody a second (or subsequent) time for the same offense, the term will begin again at day zero." 725 ILCS 5/103-5(a) (West 2022).

¶ 32    The 120-day speedy-trial period begins to run automatically if a defendant remains in custody pending trial. *People v. Wooddell*, 219 Ill. 2d 166, 174, 847 N.E.2d 117, 122 (2006). Any delay occasioned by the defendant within this term will suspend or toll the term for the time for the delay. 725 ILCS 5/103-5(f) (West 2022).

¶ 33    If a person is not tried within the statutory speedy-trial term, the person shall be discharged from custody and the charges must be dismissed. 725 ILCS 5/103-5(d) (West 2022); *People v. Woodrum*, 223 Ill. 2d 286, 299, 860 N.E.2d 259, 269 (2006). Subsection (b) of the Code (725 ILCS 5/103-5(b) (West 2022)), in turn, creates a 160-day speedy-trial right for persons released on bond or recognizance, and this period begins to run only when the accused files a speedy-trial demand. To invoke the 160-day period of subsection (b), defendants who are on bail or recognizance must serve the State with a formal demand. *Wooddell*, 219 Ill. 2d at 175.

¶ 34    The general rule is that where a defendant is in custody awaiting trial in one county and there is a charge pending against him in another county, the defendant cannot be deemed to be in custody for the latter offense until such time as the proceedings against him in the first county are terminated and the defendant is returned to, or held in custody for, the second county. See, *e.g.*, *People v. Carter*, 193 Ill. App. 3d 353, 356, 549 N.E.2d 763, 765 (1989). This principle has been recognized even when the defendant has appeared before the court in the second county but is subsequently returned to the first county for further proceedings. *People v. Gardner*, 105 Ill. App. 3d 103, 111-12, 433 N.E.2d 1318, 1323-24 (1982). It has also been extended to situations where the defendant is in federal custody when the state charges are filed. See *People v. Neumann*, 148

Ill. App. 3d 362, 367-68, 499 N.E.2d 487, 490-91 (1986) (finding defendant was not under control of the state when in federal custody, and thus section 103-5(a) did not apply).

¶ 35 The above principle has further been applied when a defendant was released on bond in one county and then arrested in another county on another charge. *People v. Hatch*,110 Ill. App. 3d 531, 533-36, 442 N.E.2d 655, 657-59 (1982). In *Hatch*, the defendant was arrested and released on bond in Du Page County and subsequently arrested in Kane County. Although the defendant appeared in Du Page County pursuant to a writ after his Kane County arrest, the appellate court held defendant was not in custody in Du Page County for speedy-trial purposes until the termination of the Kane County proceedings. *Hatch*, 110 Ill. App. 3d at 535. The court reasoned, were it to hold otherwise, the 120-day term would be running simultaneously in two counties, which would create administrative problems and potentially delay the trial in the second county to the defendant's detriment. *Hatch*, 110 Ill. App. 3d at 535-36.

¶ 36 We determine the same principle applies here. Defendant was initially in state custody but, after he posted bond, he was released from state custody and taken into federal custody. At that point, section 103-5(a) explicitly states it did not apply to defendant. See 725 ILCS 5/103-5(a) (West 2022) ("The provisions of this subsection (a) do not apply to a person on bail or recognizance for an offense but who is in custody for a violation of his or her parole."). Under the case law, defendant was not in state custody for speedy-trial purposes until the federal proceeding was terminated and he was returned to state custody. At that time, the 120-day period would begin to run. Any other conclusion would create an untenable circumstance in which the State would be bound to try a defendant within the statutory period despite having no actual control over the defendant. See *Neumann*, 148 Ill. App. 3d at 368 (stating defendant was not under control of the State, and therefore section 103-5(a) was inapplicable).

¶ 37 Defendant argues we must reach a different result because the withdrawal of his bond returned him to state custody while the federal authorities detained him. The withdrawal of the bond is normally a means of ensuring the defendant receives sentencing credit for time spent in simultaneous custody. See *People v. Robinson*, 172 Ill. 2d 452, 459-63, 667 N.E.2d 1305, 1308-10 (1996). However, the withdrawal of bond has also been held to return a defendant to custody for speedy-trial purposes when a defendant has been released on bond in a county and then rearrested in the same county for a different offense. *People v. Arnhold*, 115 Ill. 2d 379, 383, 504 N.E.2d 100, 101-02 (1987). However, that is not the case here. Defendant was physically in federal custody at the time he withdrew his bond, and he remained in federal custody. Any simultaneous custody with the State was due solely to the bond withdrawal. On this point we find *People v. Wigman*, 2012 IL App (2d) 100736, 979 N.E.2d 583, instructive.

¶ 38 In *Wigman*, the defendant was arrested in Kendall County, posted bond, and then failed to appear, resulting in the issuance of an arrest warrant. The defendant was later found to be in custody in Will County, which failed to produce the defendant. Addressing issues of credit for time served and whether the defendant was in custody or released on bail for speedy-trial purposes, the *Wigman* court found the defendant was in simultaneous custody and entitled to credit for time spent in custody. *Wigman*, 2012 IL App (2d) 100736, ¶ 40. However, the *Wigman* court agreed with the trial court's finding that, for speedy-trial purposes, the defendant would not be deemed in the custody of Kendall County until the proceedings in Will County were concluded. *Wigman*, 2012 IL App (2d) 100736, ¶¶ 38-40. We find the same here. While defendant's withdrawal of his bond may entitle him to credit for time served in simultaneous custody, for speedy-trial purposes, the time did not begin to run until the federal proceedings were concluded.

¶ 39 Relying on *People v. Stanitz*, 367 Ill. App. 3d 980, 857 N.E.2d 288 (2006), defendant also argues he was continuously in state custody because, even though he posted bond, he never was actually released, and the State's action of surrendering him to federal custody impaired his speedy-trial right. Defendant correctly notes that, where the State first has custody of a defendant and then voluntarily surrenders the defendant to federal authorities in an attempt to evade its speedy-trial obligations, the defendant may be deemed to have remained in state custody for purposes of section 103-5(a). See *Stanitz*, 367 Ill. App. 3d at 989. However, we find *Stanitz* distinguishable.

¶ 40 In *Stanitz*, the defendant was charged in July 2004 with attempting to obtain a drug prescription using a false name. At some point before September 30, 2004, he was arrested and held in the Du Page County jail, and an order appointing the defendant a public defender noted defendant was "in custody." *Stanitz*, 367 Ill. App. 3d at 981. Notably, the defendant was never released on bail. On September 30, 2004, the defendant made a speedy-trial demand. On January 18, 2005, less than 10 days before the defendant's trial date, which would have been 119 days after he filed his speedy-trial demand, federal authorities removed the defendant from the Du Page County jail to a facility in Cook County to await trial on a federal charge. The defendant was not returned to Du Page County until May 2005. *Stanitz*, 367 Ill. App. 3d at 981-82.

¶ 41 On appeal, the State argued the speedy-trial period was tolled when federal authorities placed the defendant in the custody of Cook County pending the disposition of his federal charge. The Second District found the speedy-trial period set forth in section 103-5(a) was triggered and was not tolled because the defendant was in state custody and the State voluntarily surrendered the defendant to federal authorities. *Stanitz*, 367 Ill. App. 3d at 986-89. The court

- 17 -

reasoned the State could not evade its speedy-trial obligations by surrendering a defendant to federal authorities. In particular, the court stated:

> "If the State is free to choose whether to surrender a defendant to federal authorities, then its decision to do so should not enable it to evade its responsibility to try the defendant within the statutory period. Moreover, any delay occasioned entirely by the State's own choice cannot reasonably be said to have been 'occasioned by the defendant.' " *Stanitz*, 367 Ill. App. 3d at 986.

¶ 42   Here, the State did not voluntarily relinquish defendant to the federal authorities. Unlike in *Stanitz*, where the defendant remained in state custody, defendant here posted bond and was then detained by federal authorities. Thus, defendant was not in custody when he was held by federal agents, making an analysis under *Stanitz* concerning tolling the 120-day period inapplicable. Instead, as previously discussed, section 103-5(a) was not in effect at the time the federal authorities took custody of defendant.

¶ 43   Finally, defendant argues he relied on previous trial court findings that he was in state custody for speedy-trial purposes and suggests the State's acquiescence to that conclusion should require adherence to the 120-day statutory period. However, while the court at times stated defendant was "in custody" and did so at times in reference to defendant's speedy-trial right, the record also shows the court initially was not fully aware defendant had posted bond or was still on bond at the time the federal authorities detained him. Because of that, the court mistakenly believed the State had voluntarily surrendered defendant to the federal authorities—an act we note would have brought the principles from *Stanitz* into consideration.

¶ 44   Moreover, the record shows the defense was complicit in allowing that mistake. On October 7, 2022, defense counsel told the trial court defendant had posted bond "and was

rearrested," without explaining who rearrested defendant. Defense counsel agreed with a statement by the court that defendant "was in custody here" at the time of the motion to withdraw the bond, and when the court specifically stated, "So the Feds—and our corrections allowed the Feds to take him somewhere else," defense counsel stated, "Correct." Then, throughout the proceedings, the court often referred to defendant as "in custody," without specifically referring to either state or federal custody. The court also stated, in regard to the withdrawal of the bond, that defendant was both in state and federal custody. As time went on and speedy-trial issues became more apparent, the State specifically challenged defense counsel's assertion that defendant was in state custody for speedy-trial purposes and objected to a delay being attributed to it.

¶ 45          While the statutory speedy-trial provisions are to be liberally construed in favor of a defendant because they were enacted to avoid infringements of the defendant's constitutional speedy-trial right, that right "is not a sword to be used to extricate oneself from criminal charges; it is a shield to protect the accused from unjust and prejudicial delays occasioned by the State." (Internal quotation marks omitted.) *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 14, 171 N.E.3d 74. We do not agree that the State here acquiesced to the trial court's findings regarding defendant's custody status or the legal effect of any such findings, which the record shows involved facts that were far from clear to both the court and the parties and presented an arguably novel legal issue.

¶ 46                              B. Constitutional Right

¶ 47          Defendant next argues he was deprived of his constitutional right to a speedy trial. On this point, we agree with the State that defendant forfeited the matter. Defendant never raised a constitutional speedy-trial claim in the trial court. However, defendant notes we may review the matter for either plain error or ineffective assistance of counsel. Before addressing either plain

error or ineffective assistance of counsel, we must first consider whether any error occurred. See *People v. Betance-Lopez*, 2015 IL App (2d) 130521. ¶ 28, 38 N.E.3d 36. We conclude no error occurred.

¶ 48 There are four factors to be balanced to determine whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay, (2) the defendant's assertion of the right, (3) the reasons for the delay, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *People v. Bazzell*, 68 Ill. 2d 177, 182, 369 N.E.2d 48, 50 (1977). "Once the [*Barker*] factors have been considered, 'courts must still engage in a difficult and sensitive balancing process.' " *People v. Crane*, 195 Ill. 2d 42, 60, 743 N.E.2d 555, 566 (2001) (quoting *Barker*, 407 U.S. at 533). Each factor must be weighed and considered in light of the circumstances of the case, as reflected in the record. *Bazzell*, 68 Ill. 2d at 182-83. However, "[a]ll four factors are closely related," and no one factor is dispositive. *Crane*, 195 Ill. 2d at 52. Because "a certain amount of delay is inevitable and wholly justifiable [citation], a speedy-trial inquiry will not be triggered unless the complained-of delay crosses the threshold from ordinary to presumptively prejudicial." (Internal quotation marks omitted.) *Crane*, 195 Ill. 2d at 52. Thus, the first factor considered is the length of the delay. *Crane*, 195 Ill. 2d at 52.

¶ 49 "In general, courts have recognized a delay approaching one year to be 'presumptively prejudicial.' " *Crane*, 195 Ill. 2d at 52-53 (quoting *Barker*, 407 U.S. at 530-31). A finding of presumptive prejudice, however, does not imply the delay will be found to have actually prejudiced the defendant. Rather, it simply marks the point at which courts deem the delay unreasonable enough to trigger the full *Barker* inquiry. *Crane*, 195 Ill. 2d at 53; *People v. Prince*, 242 Ill. App. 3d 1003, 1008, 611 N.E.2d 105, 109 (1993).

¶ 50    The weight accorded the reasons cited by the State for the delay is dependent on the particular circumstances of the case, such that deliberate delays are weighted heavily and negligence is weighted less heavily. *Barker*, 407 U.S. at 531; *Crane*, 195 Ill. 2d at 55. Whether and how a defendant asserts his right is also a factor. *Barker*, 407 U.S. at 531. Finally, in assessing the prejudice factor, courts consider the interests of defendants the speedy-trial right was designed to protect: (1) preventing undue and oppressive incarceration, (2) minimizing the anxiety and concern that accompanies public accusations, and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532.

¶ 51    "[T]he ultimate determination of whether a defendant's constitutional speedy-trial right has been violated is subject to *de novo* review." *Crane*, 195 Ill. 2d at 52. However, we will uphold the trial court's factual determinations unless they are against the manifest weight of the evidence. *Crane*, 195 Ill. 2d at 51. Here, as the matter was not raised in the trial court and the facts are undisputed, we consider the matter *de novo*.

¶ 52    Defendant claims a delay of 278 days, although we note the total time from defendant's arrest on August 13, 2022, to his trial on August 7, 2023, was nearly a year. However, even if we were to find that delay presumptively prejudicial, defendant has not shown a constitutional speedy-trial violation. Defendant did not demand trial until November 2022, and the delay of the trial was due to defendant's parole violation, as opposed to any action or inaction of the State. While defendant argues the State refused to attempt to obtain a writ to bring him to Winnebago County, the State presented evidence the federal authorities refused to allow the state to regain custody. As to prejudice, nothing indicates defendant was unduly incarcerated. He was held in federal custody based on his parole violation, and he does not suggest that incarceration was unlawful.

¶ 53　　　　Although defendant contends that he suffered prejudice because he was later acquitted of the drug charges, which could have helped him in his federal proceedings, the record does not contain sufficient details about defendant's federal case to reach such a conclusion. Thus, it is merely speculative. Notably, defendant does not cite any case finding a constitutional violation under facts similar to his case, nor does he specifically address the factors to be balanced, other than to refer back to his statutory argument, which we have found lacks merit. Accordingly, we do not find a constitutional speedy-trial violation. Because there was no error, there was no plain error or ineffective assistance of counsel.

¶ 54　　　　　　　　　　　　III. CONCLUSION

¶ 55　　　　For the reasons stated, we affirm the judgment of the trial court.

¶ 56　　　　Affirmed.